IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| GLYNN PRIDE, | § | |
| Plaintiff, | § § § | |
| v. | § | 2:19-CV-234-Z |
| PETER O'ROURKE, Acting Secretary of the Department of Veterans Administration | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 35. Having considered the Motions, Replies, and Responses, the Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety.

### BACKGROUND

This case arises out of an employment dispute between Glynn Pride ("Pride") and his former employer, the Department of Veterans Administration ("Defendant"). While he was employed with Defendant from 2013 to 2017, Pride filed several workplace complaints with Defendant related to his treatment based on his race, gender, national origin, and age. ECF No. 41 at 6.

After exhausting his administrative remedies as required for federal employees, Pride sued Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and 42 U.S.C. § 1983 ("Section 1983"). ECF No. 19 at 1. The parties agree that Pride's current suit only relates to two of his EEO complaints: (1) his hostile-work-environment claim filed June 1, 2016, and (2) his unlawful-termination claim filed August 15, 2017. ECF No. 41 at 6; ECF No. 42 at 1, 2.

Defendant now moves for an initial summary judgment on the limited grounds that Pride previously released his claims or is alternatively time-barred from bringing them. ECF No. 35.

## A. Administrative Exhaustion

A federal employee who claims to have been subjected to employment discrimination must pursue an administrative process before he can present any claim in court. This process requires the employee to make timely contact with an agency counselor and then file an administrative complaint with the "EEO" division of the agency. *See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006); 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(d).

If the agency does not resolve the complaint to the employee's satisfaction, the employee may then pursue further administrative appeal with the Equal Employment Opportunity Commission – Office of Federal Operations ("OFO"), or file suit in federal court. Claims of age discrimination are treated slightly different. In such a case, an employee may forego the administrative process entirely and proceed directly in federal court after giving notice to the Equal Employment Opportunity Commission ("EEOC") or may choose the administrative route by filing the claim with the agency's office. *Smith v. Potter*, 400 F. App'x 806, 809–10 (5th Cir. 2010). Once an employee chooses the administrative route though (as Pride did here), the usual rules for exhaustion apply.

## B. Pride's Hostile-Work-Environment Claim

Pride filed his hostile-work-environment complaint on June 1, 2016 with Defendant. The EEO complaint alleged Defendant subjected Pride to a hostilework environment. Pride's evidence was five events: (1) Chief Housekeeping Officer O'Dell denied his request for "yellow belt" training; (2) Housekeeping Aide Supervisor Joe Garcia yelled at him in a threatening manner; (3) O'Dell proposed a seven-day suspension for Pride; (4) the night supervisor requested another

employee report negative issues concerning Pride's work closet; and (5) O'Dell suspended Pride for fourteen days. ECF No. 37-7 at 9-11; ECF No. 41 at 6. Defendant denied Pride's EEO complaint on July 11, 2017. ECF No. 37-8 at 1, 12. Pride appealed to the OFO on July 27, 2017. ECF No. 37-9.

During the pendency of his appeal, on February 2, 2018, Pride and Defendant signed a settlement agreement, (the "Settlement Agreement") which settled for $3,500 "any and all potential and/or existing claims [. . .] including any claim that has been filed or could be filed as of the date of this settlement agreement [. . .]." ECF No. 37-3 at 2, 5. This settlement was mediated by the Office of Resolution Management for the Department of Veterans Affairs ("ORM").

ORM, however, did not forward the Settlement Agreement to the OFO attorney handling Pride's appeal. ECF No. 37-1 at 4. Consequently, the OFO continued to correspond with Pride regarding his hostile-work-environment case, even though it had been settled. ECF No. 37-10. Pride continued to pursue his appeal with OFO and never notified it of the Settlement Agreement. On December 18, 2018, the OFO affirmed the Defendant's dismissal of Pride's hostile work environment claim. ECF No. 37-10 at 7. On January 8, 2019, Pride requested reconsideration of the OFO's decision ECF No. 37-11 at 1. On July 26, 2019, the OFO upheld its decision dismissing Pride's claim and advised Pride of his right to file a civil action within ninety days of receiving the OFO's decision. ECF No. 37-14 at 3.

### C. Pride's Unlawful-Termination Claim

On August 15, 2017, Pride filed a separate EEO complaint with Defendant regarding his allegedly unlawful termination. ECF No. 37-16. This claim was explicitly not released by the Settlement Agreement. ECF No. 37-3 at 2. On April 30, 2018, Defendant dismissed Pride's unlawful termination claim. ECF No. 37-18 at 8. This decision also explained that Pride had a

choice: he could appeal this decision within thirty days to the Merit Systems Protection Board ("MSPB"), *or* he could bring a civil action in district court within thirty days. ECF No. 37-18 at 8. The final decision also provided instructions on where and how to address a MSPB appeal—specifically, 1100 Commerce Street, Dallas, TX 75242. *Id.*

On May 23, 2018, Pride mailed a MSPB appeal form to the Department of Veterans Affairs, Office of Employment Discrimination in Washington, D.C. — an altogether different agency and address than that iterated in the MSPB's April 2018 decision. ECF No. 37-20 at 8. Consequently, Pride never received a final decision from the MSPB regarding his attempted appeal. ECF No. 41 at 8. Eighteen months later, Pride brought suit in the District Court for the District of Columbia who then transferred the case to this Court.

### LEGAL STANDARDS

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A material fact is one that 'might affect the outcome of the suit'" and a "factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### ANALYSIS

#### A. Section 1983

As a preliminary matter, Pride brings claims under Title VII, the ADEA, and Section 1983. ECF No. 19 at 1. Section 1983 does not apply to actions of the federal government. 42 U.S.C. § 1983; *see, e.g., Rodriguez v. Ritchey*, 556 F.2d 1185, 1189 n.13 (5th Cir. 1977) (citing *District of*

4

*Columbia v. Carter*, 409 U.S. 418 (1973)). Indeed, Pride does not contest this point in his response brief — he fails to discuss Section 1983 and states that the suit is only brought under Title VII and ADEA. ECF No. 41 at 5, 9. Accordingly, Pride's claims under Section 1983 are non-actionable.

### B. Hostile Work Environment

Defendant moves for summary judgment on Pride's hostile-work-environment claim because (1) Pride voluntarily waived this claim in the Settlement Agreement; and (2) alternatively it is time-barred. ECF No. 36 at 17, 23. Upon careful consideration, the Court finds that Pride voluntarily waived his hostile-work-environment claim under the Settlement Agreement. Additionally, the Court finds this claim is also untimely.

"Compromises of disputed claims are favored by the courts" and binding on the parties. *Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910); 29 C.F.R. § 1614.504 (a) ("Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties."). "[U]nder a great variety of circumstances, a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967).

In this case, the Settlement Agreement is unambiguous and applies to Pride's hostile-work environment claim. ECF No. 37-3. Pride does not dispute that he knowingly and voluntarily executed the Settlement Agreement, which explicitly waived "any claim that has been filed or could be filed as of the date of the signing [. . .]" and excluded only Pride's unlawful-termination claim from its scope. ECF No. 37-3 at 2.

According to Pride, however, a "change of circumstances warrants repudiation" of the Settlement Agreement. Pride cites two reasons: (1) the ORM failed to forward the Settlement

Agreement to the OFO; and (2) the OFO continued corresponding with Pride regarding his hostile work environment claim without mention or acknowledgement of the Settlement Agreement for a year and a half. ECF No. 41 at 10-11. *Weaver v. World Fin. Corp. of Tex.*, No. 3:09-CV-1124-G, 2010 WL 190456, at *1 (N.D. Tex. May 12, 2010). Considering these facts, Pride argues that enforcing the Settlement Agreement is unjust because he believed his efforts in pursuing this claim were not futile. ECF No. 41 at 11.

Pride's argument is unpersuasive because he fails to show any material change in circumstances.[1] As an initial matter, neither party contests the validity of the Settlement Agreement — Pride signed the agreement and the VA compensated him accordingly. ECF No. 37-3 at 1, 5; ECF No. 37-19 at 3. Pride avers that the OFO's continued correspondence with him regarding this claim constitutes a change of circumstances because it continued to go through the administrative process with him as though the Settlement Agreement did not bar the claim.[2] ECF No. 41 at 10-11.

But *Pride* is responsible for this miscommunication. Pride provides no explanation for why he did not provide the Settlement Agreement to the OFO himself. As a signer of the document,

---

[1] The "change of circumstances" language originated, in this context, out of a Seventh Circuit case which found a plaintiff's oral agreement to settle was enforceable even when he refused to sign the later written agreement and attempted to repudiate nine months later. *Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501, 504 (7th Cir. 1982). After finding no differences between the terms of the oral or written agreement, no logical reason for changing his mind, and that the plaintiff entered into the agreement knowingly and voluntarily, the court found no change of circumstances present and enforced the oral settlement agreement. *Id.* The Fifth Circuit quoted the language, unelaborated. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994).

[2] This Court and other district courts track this "change of circumstances" language but have never identified such a change. *See Weaver*, 2010 WL 190456 at *1; *see also Crane v. Edu. Futures Group*, No. 3:12–CV–04060–K, 2014 WL 2117174 at *2 (N.D. Tex. May 21, 2014); *and see Murphy v. YRC Inc.*, No. A–10–CA–970 LY, 2011 WL 3902760 at *3 (W.D. Tex. Sept. 6, 2011). And according to the Fifth Circuit, even "an oral agreement to settle a Title VII claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement [. . .]" "[a]bsent a factual basis rendering it invalid [. . .]." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). Accordingly, it seems that a "change of circumstances" was intended to denote factual circumstances which would invalidate a prior settlement agreement, such as "fraud, coercion, or overreaching [. . .]" or make enforcement extremely inequitable. *Id.* at 1210.

Pride was certainly capable of informing the OFO of the settlement. Rather, it appears as if Pride attempted to collect both a payment from the ORM and the OFO.

Furthermore, Pride accepted $3,500 in consideration. He cannot now turn around and attempt to repudiate a valid settlement. *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 937 (5th Cir. 1994) ("Even if a release is tainted . . ., it is ratified if the releasor retains the consideration after learning that the release is voidable. A person who signs a release, then sues his or her employer for matters covered under the release, is obligated to return the consideration.").

Because neither the failure to forward the Settlement Agreement nor the continued correspondence between Pride and the OFO constituted a change of circumstances, Pride's hostile work environment claim is voluntarily waived per the Settlement Agreement. ECF No. 37-3.

\* \* \*

Alternatively, Defendant also seeks summary judgment on the hostile work environment claim because it is time-barred. ECF No. 36 at 19. The Court finds the claim is untimely.

Generally, a federal employee has ninety days from receipt of an agency's final decision to "file a civil action" on a discrimination claim. *Taylor v. Books A Million*, 296 F.3d 376, 379 (5th Cir. 2002) (citing 42 U.S.C § 2000(e)—5(f)(1) (1994)). The parties agree that, at the latest, this ninety-day period began on August 2, 2019 and thus ended on October 31, 2019. ECF No. 36 at 19; ECF No. 41 at 11. *Id.*

But the parties disagree about when Pride pursued judicial action. On one hand, Pride argues he timely pursued judicial action when he: (1) filled out the complaint letter, (2) had it notarized, and (3) signed the final paragraph on October 11, 2019. ECF No. 41 at 11. On the other hand, Defendant argues it is the date the Complaint was filed with the court or, at the earliest, the date it was mailed. ECF No. 36 at 19; ECF No. 42 at 3–4.

7

Pride's complaint was *filed* on November 13, 2019, which is well after the October 31 deadline. *See Shephard v. Magellan Midstream Partners, L.P.*, EP-07-CV-307-KC, 2009 WL 10701868 (W.D. Tex. Jan. 13, 2009) ("The Supreme Court has stated that a civil action is brought when it is commenced as provided in Rule 3 of the Federal Rules of Civil Procedure, or when a plaintiff 'fil[es] a complaint with the court.'") (quoting *Baldwin Cnty. Welcome Center v. Brown*, 466 U.S. 147, 149 (1984)). Moreover, competent summary-judgment evidence[3] shows that Pride mailed his original Complaint on November 6, 2019, which is also outside of the ninety-day deadline, which the Fifth Circuit strictly construes. *Taylor*, 296 F.3d at 378–79. Because Pride filed and mailed the Complaint after the ninety-day deadline expired, his hostile-work-environment claim is untimely.

Pride argues alternatively that this Court should apply equitable tolling to this claim because Pride pursued his rights diligently. ECF No. 41 at 12. But "diligent efforts" alone, absent misleading conduct by a defendant or the court, must evidence the claimant's active pursuit of his judicial remedies during the statutory period. *Baldwin Cnty.*, 466 U.S. at 151; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Equitable tolling is inappropriate when a court "receiv[es] late filings" because "the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96 (citing *Baldwin Cty. Welcome Ctr.*, 466 U.S. at 151). Pride failed to file his Complaint before the deadline even though he had signed and notarized it almost a month earlier. ECF No. 1 at 7, 11. He provides no reason for the delay. Considering this, Pride's argument is unavailing, and the Court will not equitably toll his hostile work environment claim.

---

[3] There is no competent summary-judgment evidence that Pride mailed the cover letter or complaint on October 11, 2019. The letter itself is not competent evidence of the date of mailing. Nor does Pride's signature on his complaint or the notary stamp constitute competent evidence of the date the complaint was mailed. he record establishes that Pride mailed his complaint on November 6, 2019. The District of Columbia clerk included a copy of Pride's envelope when it docketed Pride's complaint. ECF No. 1at 11. The mailing label affixed by the United States Postal Service shows that Pride mailed his complaint on November 6, 2019.

## C. Unlawful Termination

Defendant also moves for summary judgment on Pride's unlawful-termination claim on the grounds that it is untimely. ECF No. 36 at 19-20. Both parties agree that this claim was expressly excepted from the scope of the Settlement Agreement. ECF No. 36 at 23; ECF No. 41 at 13; ECF No. 37-3 at 2. They also agree that Pride had thirty days from the time the Defendant denied his complaint, April 30, 2018, to either appeal his termination complaint to the MSPB or file suit in federal court. ECF No. 41 at 13; ECF No. 36 at 20.

The crux of the dispute is whether Pride did so within the thirty-day period. Pride asserts he appealed to the MSPB on May 23, 2018, within the thirty days provided. ECF No. 14 at 13. Conversely, Defendant argues that this purported appeal was ineffectual because Pride never actually mailed it to the MSPB in Dallas and, in fact, mailed it to a different agency in Washington, D.C. ECF No. 42 at 8.[4] According to the Defendant, the relevant date is when Pride filed the present lawsuit in November 2019, well beyond the thirty-day window. ECF No. 36 at 20.

The Court finds that Pride's appeal is untimely. Pride's invocation of the 5 U.S.C. § 7702 is unavailing:

> In any case in which an employee is required to file any action, appeal, or petition under this section and the employee timely files the action, appeal, or petition with an agency other than the agency with which the action, appeal, or petition is to be filed, the employee shall be treated as having timely filed the action, appeal, or petition as of the date it is filed with the proper agency.

5 U.S.C. § 7702(f).

---

[4] The Court notes that Plaintiff's argument borders on deception. In his response, Plaintiff stated "He mailed his appeal to the MSPB on May 23, 2018. Doc. 37-20 at p. 1. The MSPB never responded to Pride's appeal." But Plaintiff *did not mail* his appeal to the MSPB. He, in fact, directed his letter to the Acting Secretary of the VA. There is a qualitative difference between "Plaintiff mailed his appeal to the MSPB" and "Plaintiff attempted or believed he was mailing his appeal to the MSPB." The first is a statement of fact; the second is a statement regarding mental state. Plaintiff's counsel erred when he conflated the two.

9

Pride mailed his appeal on May 23, 2018, within the thirty days, to the United States Department of Veterans Affairs, Office of Employment Discrimination. ECF No. 37-20 at 8. Although Pride mailed his appeal to an inappropriate agency, he argues that his appeal "shall be treated as having timely filed . . . *as of the date it is filed with the proper agency*" *Id.* (emphasis added).

This "savings clause" protects federal employees "confused by the federal government's complex procedures." *See Schlottman v. Perez*, 739 F.3d 21, 25 (D.C. Cir. 2014). Accordingly, if Pride were to now file his termination claim before the MSPB, this savings clause would allow him to timely pursue his claim because he originally *timely* pursued his appeal in the *wrong* forum. *See id.* at 26 ("[T]he savings clause excuses errors only in the place, not time, of filing.").

But the savings clause does not affect an action *brought in federal court*. By its express language, the savings clause only applies to actions, appeals, or petitions filed with an "agency." Accordingly, Pride only had thirty days to file suit in federal court. 29 C.F.R. § 1614.310(a). Instead, Pride waited over eighteen months before bringing suit.[5]

Alternatively, Pride asks the Court to apply equitable tolling to his unlawful termination claim because a "special relationship" existed between Defendant and the MSPB, so Defendant should have been aware of Pride's appeal. ECF No. 41 at 14.

The Court finds there is no special relationship between Defendant and the MSPB. Generally, when a court tolls a limitations period after a plaintiff sued the wrong defendant, the wrong defendant and the proper defendant are interrelated entities. *See, e.g., Krupski v. Costa Crociere S.p.A.*, 560 U.S 538, 556 (2010). The Department of Veterans Administration is an executive department responsible for administering the laws which provide benefits and services

---

[5] Because there never was an actionable appeal before the MSPB, Plaintiff's appeal to § 7702(e)(1) is also ineffective. ECF No. 41 at 13.

to veterans. 38 U.S.C. § 301(a)-(b). But "the MSPB is 'an *independent* adjudicator of federal employment dispute[s]' that hears appeals from 'particularly serious' actions, such as terminations of employment." *Punch v. Bridenstine*, 945 F.3d 322, 324 (5th Cir. 2019) (quoting *Klockner v. Solis*, 568 U.S. 41, 44 (2012)) (emphasis added). There is not a special relationship between the MSPB and Defendant *and every other federal agency* who the MSPB reviews. Such a finding would impermissibly expand the special relationship concept.[6]

Lastly, equitable tolling is used "only sparingly" when "the claimant has actively pursued his judicial remedies [. . .] during the statutory period [. . .]." *Irwin*, 498 U.S. at 96. Pride waited over eighteen months to bring this suit and fails to justify such a lengthy delay. Other than his ineffectual appeal to the wrong entity, Pride did not pursue this claim at all. At no point did he ever inquire as to why his appeal was not moving forward. ECF No. 42 at 10. Courts are "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96. There is simply no basis to justify such extraordinary relief in this case. The Court declines to toll Pride's unlawful termination claim.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's Motion for Summary Judgment (ECF No. 35) in its entirety.

**SO ORDERED.**

June 30, 2021.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff states "the VA was aware of Pride's appeal and would not be disadvantaged in responding to such an appeal." ECF No. 41 at 10. But this case is not an administrative appeal from the VA's original decision. It is an original lawsuit brought in federal court.